FILED

NOVEMBER 30, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07 C 6743

# EXHIBIT 1

JUDGE MORAN
MAGISTRATE JUDGE ASHMAN

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
11/01/2007
CT Log Number 512747167

|||||||||||||||||||||||||||||||||||||||||||||

**TO:**     MaryAnn Casper, 3rd Floor
Motorola, Inc.
1303 East Algonquin Road
Schaumburg, IL 60196-

**RECEIVED**

NOV 02 2007

MOTOROLA LAW DEPT.

**RE:**     **Process Served in Illinois**

**FOR:**    Motorola, Inc. (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | James C. Ho, Pltf. vs. Motorola, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons (2 sets), Verified Complaint, Jury Demand, Verification, Exhibits |
| **COURT/AGENCY:** | Cook County Circuit Court - Cook County Department - Law Division, IL<br>Case # 2007L012185 |
| **NATURE OF ACTION:** | Employee Litigation - Breach of Contract - Fraud in the Inducement - Plaintiff alleges breach of settlement agreement reached in June 2001 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/01/2007 at 12:00 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days, not counting the day of service |
| **ATTORNEY(S) / SENDER(S):** | James C. Ho - Pro Se<br>2136 Briar Hill Drive<br>Schaumburg, IL 60194<br>847-885-1893 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 790864817409<br>Email Notification, MaryAnn Casper A10264@email.MOT.COM |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | C T Corporation System<br>Tawana Carter<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604 |
| **TELEPHONE:** | 312-345-4336 |

Page 1 of  1 / TL

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

2120 - Served          2121 - Served
2220 - Not Served      2221 - Not Served
2320 - Served By Mail  2321 - Served By Mail
2420 - Served By Publication   2421 - Served By Publication
SUMMONS                ALIAS - SUMMONS                    CCG N001-75M-2/28/05 (43480658)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____ LAW _____ DIVISION

(Name all parties)

JAMES C. HO

v.

MOTOROLA, INC.

2007L012185
CALENDAR/ROOM N
TIME 00:00
Breach of Contract

No. _____2007L012185_____

CT Corporation System
208 S. LaSalle Street, Suite
814
Chicago, IL 60604

### SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ **Richard J. Daley Center, 50 W. Washington, Room** __801__ **, Chicago, Illinois 60602**

☐ **District 2 - Skokie**       ☐ **District 3 - Rolling Meadows**   ☐ **District 4 - Maywood**
  5600 Old Orchard Rd.            2121 Euclid                          1500 Maybrook Ave.       50.00
  Skokie, IL 60077                Rolling Meadows, IL 60008            Maywood, IL 60153        10.00

☐ **District 5 - Bridgeview**    ☐ **District 6 - Markham**           ☐ **Child Support**
  10220 S. 76th Ave.              16501 S. Kedzie Pkwy.                28 North Clark St., Room 200   60.00
  Bridgeview, IL 60455            Markham, IL 60426                    Chicago, Illinois 60602        60.00

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _____          **WITNESS,** _____ OCT 29 2007

Name: __JAMES C. HO__

Atty. for: _____                     DOROTHY BROWN
                                                CLERK OF CIRCUIT COURT
Address: __2136 BRIAR HILL DRIVE__

City/State/Zip: __SCHAUMBURG, IL 60194__        **Clerk of Court**

Telephone: _____          **Date of service:** _____
                                     (To be inserted by officer on copy left with defendant
                                     or other person)

Service by Facsimile Transmission will be accepted at: _____

                                     (Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-75M-2/28/05 (43480658)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____ L PAW _____ DIVISION

(Name all parties)

JAMES C. Ho

v.

MOTOROLA, INC.

No. Breach of Contract

2007L012185
CALENDAR/ROOM N
TIME 00:00
Breach of Contract

CT Corporation System
208 _____ Street Suite
Chicago, IL 60604

### SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __201__, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ☐ **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ☐ **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ☐ **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ☐ **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

REF SHERIFF # 062164
CASHIER: DENISE

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _____

Name: JAMES C. Ho

Atty. for: _____

Address: 2136 BRIAR HILL DRIVE

City/State/Zip: SCHAUMBURG IL 60194

Telephone: _____

Service by Facsimile Transmission will be accepted at: _____
                                         (Area Code)   (Facsimile Telephone Number)

WITNESS, _____

OCT 29 2007

Clerk of Court

DOROTHY BROWN
CLERK OF CIRCUIT COURT

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

SEAL

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Complaint At Law - Verified

## IN THE CIRCUIT COUT OF COOK COUNTY, ILLINOIS

### COUNTY DEPARTMENT, LAW DIVISION

2007L012185
CALENDAR/ROOM N
TIME 00:00
Breach of Contract

|  |  |  |
|---|---|---|
| **JAMES C. HO** | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.** |
| | ) | |
| **MOTOROLA, INC.** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

FILED
07 OCT 29 AM 11:54
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

### VERIFIED COMPLAINT AT LAW

#### Plaintiff Demands Trial By Jury

NOW COMES, the Plaintiff, **JAMES C. HO** ("Plaintiff"), in support of his complaint against the Defendant, **MOTOROLA, INC.** ("Defendant"), states as follows:

### THE PARTIES

1.   Plaintiff is a resident of Schaumburg, County of Cook, State of Illinois.

2.   Defendant, MOTOROLA INC. is a Delaware Corporation, qualified to do business, and doing business, in the State of Illinois.

3.   Plaintiff began his employment with Defendant in or about August 1991.

### JURISDICTION AND VENUE

4.   This is an action for money damages in excess of US$3,000,000.00.

5.   At all times material to this lawsuit, Plaintiff was a resident of County of Cook in the State of Illinois.

6.    At all times material to this lawsuit, Defendant located in County of Cook, and was qualified to do business, and was doing business, in the State of Illinois.

7.    All acts necessary or precedent to the bringing of this lawsuit occurred or accrued in County of Cook, Illinois.

8.    This cause of action for "breach of contract" is brought under Common Law.

9.    This cause of action for "fraud in the inducement" is brought under Common Law.

10.   This Court has jurisdiction.

11.   Venue in this Court is proper.

## STATUE OF LIMITATIONS

12.   This cause of action ("breach of contract") was commenced within ten years pursuant to 735 ILCS 5/13-206 [Code of Civil Procedure, Part 2, Personal Actions, Section 5/13-206, Ten Year Limitation, for written contracts].

13.   Starting December 11, 2002, Plaintiff diligently and continually made the best effort to find out whether or not Defendant had committed a fraud.

14.   Plaintiff would not have fully known that Defendant had decided to commit a fraud in the inducement until Plaintiff received a letter dated June 6, 2005 from Ron T. Miller Corporate Vice President of Defendant.

15.   This cause of action ("fraud in the inducement") was commenced within five years pursuant to 735 ILCS 5/13-215 [Code of Civil Procedure, Part 2, Personal Actions, Section 5/13-215, Fraudulent Concealment].

## COMMON FACTUAL ALLEGATIONS

16.   On or about May 16, 2000, Plaintiff filed a Complaint 00C 2942 (Case No. 1:00-CV-02492) against Defendant MOTOROLA INC in the United State District Court,

Northern District of Illinois, Eastern Division, alleging national origin discrimination

and retaliation. A copy of Plaintiff's complaint 00C 2942 together with its enclosures

("Lawsuit") is attached hereto as <u>Exhibit 1</u>.

17. On or about June, 2001, Plaintiff and Defendant entered into a General Release And

Settlement Agreement ("Settlement Agreement") settling the Lawsuit. A copy of

Settlement Agreement is attached hereto as <u>Exhibit 2</u>.

18. On or about May, 2001, there was a meeting of Settlement Agreement ("Settlement

Meeting").

19. At the Settlement Meeting were Plaintiff, Plaintiff's wife, the judge of the Lawsuit,

Plaintiff's lawyer, Linda Rodina and another person.

20. At the time, Linda Rodina ("Rodina") was a Human Resource Director of Defendant.

21. Rodina represented Defendant at the Settlement Meeting.

22. At the Settlement Meeting, Defendant was informed of Plaintiff's attorneys' fees and

costs.

23. At the Settlement Meeting, Defendant offered Plaintiff a one-time amount of

$20,500.00 to cover Plaintiff's attorneys' fees and costs.

24. At the Settlement Meeting, Plaintiff accepted Defendant's offer of $20,500.00 to cover

Plaintiff's attorneys' fees and costs.

25. At the Settlement Meeting, Rodina said to Plaintiff that Plaintiff would continue to be

covered under Defendant's long-term disability plan provided that Plaintiff settled the

Lawsuit.

26.   At the Settlement Meeting, Rodina assured Plaintiff that Plaintiff's present and future participation for Motorola's [Defendant's] long-term disability benefits would become unconditional provided that Plaintiff settled the Lawsuit.

27.   At the Settlement Meeting, Rodina told Plaintiff that Plaintiff would continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans and based upon Plaintiff's ability to demonstrate that Plaintiff was disabled.

28.   At the Settlement Meeting, Rodina assured Plaintiff that Motorola [Defendant] would not inquire into Plaintiff's eligibility for past and continued disability benefits based upon the discrimination and retaliation allegations made in the Lawsuit.

29.   At the Settlement Meeting, Rodina did not disclose to Plaintiff the terms of Motorola [Defendant's] long-term disability plan.

30.   At the Settlement Meeting, Rodina did not disclose to Plaintiff the terms of Motorola [Defendant's] Disability Income Plan.

31.   At the Settlement Meeting, Rodina did not tell Plaintiff that Plaintiff's coverage of Defendant's long-term disability benefits would be pursuant to the terms of Defendant's long-term disability plan.

32.   At the Settlement Meeting, Rodina did not tell Plaintiff that Plaintiff's coverage of Defendant's long-term disability benefits would be pursuant to the terms of Defendant's Disability Income Plan.

33.   At the Settlement Meeting, Rodina did not tell Plaintiff that Motorola's [Defendant's] Disability Income Plan would affect Motorola's [Defendant's] long-term disability plan.

34. At the Settlement Meeting, Rodina did not tell Plaintiff that Plaintiff's coverage of Defendant's long-term disability benefits would be pursuant to the terms of Defendant's applicable plans.

35. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had the knowledge that Defendant could change and would possibly change the terms of Defendant's long-term disability plan at the discretion of Defendant in the future.

36. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had the knowledge that Defendant could change and would possibly change the terms of the Defendant's Disability Income Plan at the discretion of Defendant in the future.

37. At the Settlement Meeting, Rodina was told that Plaintiff would not settle the Lawsuit if Plaintiff would not continue to be covered under Defendant's long-term disability plan.

38. At the Settlement Meeting, Rodina induced Plaintiff to settle the Lawsuit by telling Plaintiff to consider how much the long-term disability benefits that Plaintiff would have received by age 65.

39. At the time, Plaintiff had no reason to challenge the authority of Rodina as the Human Resource Director of IDEN organization of Motorola [Defendant] in regard to the representation that Plaintiff's present and future participation for Motorola's [Defendant's] long-term disability benefits was an exchange of the settlement of the Lawsuit.

40. At the time, Plaintiff had no reason to suspect that Defendant had consciously decided to assert false representations to induce Plaintiff to give up Plaintiff's legal rights.

41.    At the time, Plaintiff reasonably relied on the misrepresentations asserted by Rodina because Rodina not only was the Human Resource Director of IDEN organization, to which Plaintiff belonged, but also was highly regarded as an authoritative Human Resource Director at Motorola [Defendant].

42.    At the Settlement Meeting, Plaintiff told Rodina of Defendant that Plaintiff would settle the Lawsuit in exchange for Defendant's representation that Plaintiff's present and future participation for Motorola's [Defendant's] long-term disability benefits would become unconditional.

43.    At the Settlement Meeting, Rodina told Plaintiff that the terms of the Settlement Agreement would include the following three clauses provided that Plaintiff settled the Lawsuit:

44.    Clause #1 was: "Ho [Plaintiff] will continue to be covered under Motorola's [Defendant's] long-term disability plan;"

45.    Clause #2 was: "and Ho [Plaintiff] will continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans and based upon his ability to demonstrate that he is disabled;"

46.    Clause #3 was: "and Motorola [Defendant] agrees not to inquire into Ho's [Plaintiff's] eligibility for past and continued disability benefits based upon the discrimination and retaliation allegations made in the Lawsuit."

47.    At the Settlement Meeting, Plaintiff and Defendant agreed to the terms of settling the Lawsuit.

48.    Motorola [Defendant] had someone write the Settlement Agreement in accordance with Defendant's design.

49.  In or about May 31, 2001, Plaintiff received an unsigned copy of the Settlement Agreement by mail.

50.  The first sentence of Section 3 of the Settlement Agreement appeared to be a compound sentence joining the first two clauses of the three clauses, which Defendant and Plaintiff had agreed to be part of the terms of the Settlement Agreement at the Settlement Meeting. (See Exhibit 2)

51.  At the time, Plaintiff recalled that the first clause of the three clauses was "[Plaintiff] Ho will continue to be covered under Motorola's [Defendant's] long-term disability plan;"

52.  At the time, Plaintiff recalled that the second clause of the three clauses was "and [Plaintiff] Ho will continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans and based upon his [Plaintiff's] ability to demonstrate that he [Plaintiff] is disabled;"

53.  The second sentence of Section 3 of the Settlement Agreement appeared to be the third clause of the three clauses, which Defendant and Plaintiff had agreed to be part of the terms of the Settlement Agreement at the Settlement Meeting.

54.  At the time, Plaintiff recalled that the third clause of the three clauses was "Motorola [Defendant] agrees not inquire into Ho's [Plaintiff's] eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit." (See Exhibit 2)

55.  According to the second sentence of Section 3 of the Settlement Agreement, Defendant would not contest Plaintiff's eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit.

56.   At the time, Plaintiff had no reason to suspect that Defendant would contest Plaintiff's eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit.

57.   According to the second sentence of Section 3 of the Settlement Agreement, Plaintiff had no reason to suspect that Plaintiff's coverage of disability benefits was not based upon the allegations made in the Lawsuit.

58.   At the time, Plaintiff did not realize that the first sentence of Section 3 of the Settlement Agreement was ambiguous.

59.   At the time, Plaintiff had no reason to suspect that the first sentence of Section 3 of the Settlement Agreement was intended to be ambiguous.

60.   At the time, Plaintiff had no reason to suspect that the first sentence of Section 3 of the Settlement Agreement was not a compound sentence consisting of two separate clauses, which Rodina of Defendant had specified at the Settlement Meeting.

61.   At the time, Plaintiff had no reason to suspect that per the second sentence of Section 3 of the Settlement Agreement, Defendant would inquire into Plaintiff's participation for past and continued disability benefits.

62.   Section 3 of the Settlement Agreement indicated one fact that the first sentence of Section 3 of the Settlement Agreement was a compound sentence consisting of two separate sentences: Plaintiff would continue to be covered under Defendant's long-term disability plan. ("Sentence 1 Of The Compound Sentence"), and Plaintiff would continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans and based upon Plaintiff's ability to demonstrate that Plaintiff was disabled. ("Sentence 2 Of The Compound Sentence") (See Exhibit 2)

63. In addition, Section 3 of the Settlement Agreement indicated another fact that the second sentence of Section 3 of the Settlement Agreement suggested that Defendant would not contest Plaintiff's eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit. (See Exhibit 2)

64. At the time, Plaintiff had no reason to suspect that per Sentence 1 Of The Compound Sentence together with the second sentence of Section 3 of the Settlement Agreement, Plaintiff would not continue to be covered under Defendant's long-term disability plan unconditionally provided that Plaintiff settled the Lawsuit.

65. At the time, Plaintiff had no reason to suspect that per Sentence 2 Of The Compound Sentence, Plaintiff would not continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans while Plaintiff was disabled.

66. At the time, Plaintiff had no reason to suspect that Defendant had decided to fraudulently induce Plaintiff to give up Plaintiff's legal rights.

67. At the time, Plaintiff had no reason to suspect that Defendant had decided to commit a fraud.

68. At the time, Plaintiff had no reason to suspect that Defendant had decided to breach the Settlement Agreement in the future.

69. At the time, Plaintiff had no reason to suspect that Defendant had decided to exploit another interpretation of the first sentence of Section 3 of Settlement Agreement for the purpose of fabricating the capability of terminating Plaintiff's future coverage for the past and continued disability benefits in the future.

70. At the time, Plaintiff had no reason to suspect that Defendant would willfully disregard the Section 3 of the Settlement Agreement by inquiring into Plaintiff's eligibility for past and continued disability benefits in the future.

71. At the time, Plaintiff had no reason to suspect that per <u>Sentence 1 Of The Compound Sentence</u> together with the second sentence of Section 3 of the Settlement Agreement, Defendant would contest Plaintiff's future participation for past and continued disability benefits in the future.

72. At the time, Plaintiff had no reason to suspect that per <u>Sentence 1 Of The Compound Sentence</u> together with the second sentence of Section 3 of the Settlement Agreement, Defendant could terminate Plaintiff's future participation for past and continued disability benefits in the future.

73. At the time, Plaintiff had no reason to suspect that per <u>Sentence 1 Of The Compound Sentence</u> together with the second sentence of Section 3 of the Settlement Agreement, Defendant could terminate Plaintiff's future coverage for past and continued disability benefits in the future.

74. In or about May 31, 2001, Plaintiff justifiably signed the Settlement Agreement to settle the Lawsuit in view of the facts that terms of Section 3 of the Settlement Agreement appeared to be logically and semantically matching the representations asserted by Rodina at the Settlement Meeting.

75. In or about June 1, 2001, Plaintiff returned the Settlement Agreement by mail.

76. Later, Plaintiff received by mail a copy of the completely signed Settlement Agreement. (See <u>Exhibit 2</u>)

77.   Pursuant to Section 3 of the completely signed Settlement Agreement, "Ho [Plaintiff] will continue to be covered under Motorola's [Defendant's] long-term disability plan and other health and benefits plans pursuant to the terms of the applicable plans and based upon his ability to demonstrate that he is disabled. Motorola [Defendant] agrees not to inquire into Ho's [Plaintiff's] eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit." (See Exhibit 1 & Exhibit 2)

78.   Since the date on which Plaintiff signed the Settlement Agreement, Plaintiff fully complied with the terms of the Settlement Agreement.

79.   Because of signing the Settlement Agreement, Plaintiff had to terminate his employment with Defendant in or about June 2001. (See Exhibit 2)

80.   Because of signing the Settlement Agreement, Plaintiff had to agree to settle the Lawsuit and to give up Plaintiff's many other legal rights. (See Exhibit 1 & Exhibit 2)

81.   Because of signing the Settlement Agreement, Motorola [Defendant] had to agree that according to Section 3 of the Settlement Agreement, Ho [Plaintiff] would continue to be covered under Motorola's [Defendant's] long-term disability plan [provided that Plaintiff settled the Lawsuit]. (See Exhibit 2)

82.   Because of signing the Settlement Agreement, Motorola [Defendant] had to agree that according to Section 3 of the Settlement Agreement, Ho [Plaintiff] would continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans and based upon his ability to demonstrate that he was disabled. (See Exhibit 2)

83.   Because of signing the Settlement Agreement, Motorola [Defendant] had to agree that according to Section 3 of the Settlement Agreement, Defendant would not inquire into

Ho's [Plaintiff's] eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit. (See <u>Exhibit 1</u> & <u>Exhibit 2</u>)

84. Defendant performed well in accordance with the Section 3 of the Settlement Agreement for the first one and half years after the settlement of the Lawsuit.

85. Because Defendant signed the Settlement Agreement, Defendant had the duty of complying with the terms of the section 3 of the Settlement Agreement.

86. Defendant had the duty of knowing the representations that Rodina of Defendant had assured Plaintiff at the Settlement Meeting.

87. On or about December 11, 2002, Plaintiff received a letter dated December 10, 2002 from Defendant. A copy of Defendant's letter dated December 10, 2002 is attached hereto as <u>Exhibit 3</u>.

88. At the time, Plaintiff felt weak and sick and became worse after reading Defendant's letter of December 10, 2002.

89. On or about December 11, 2002, Plaintiff through Plaintiff's wife wrote and faxed a letter to Defendant. A copy of fax receipt and Plaintiff's [through Plaintiff's wife] letter dated December 11, 2002 is attached hereto as <u>Exhibit 4</u>.

90. In the letter of December 11, 2002, Plaintiff refused to accept what was stated in the Defendant's letter dated December 10, 2002. (See <u>Exhibit 4</u>)

91. In the letter of December 11, 2002, Plaintiff informed Defendant that Plaintiff had the rights to continue receiving the continued disability benefits based upon the Settlement Agreement of the Lawsuit. (See <u>Exhibit 4</u>)

92. In the letter dated December 11, 2002, Plaintiff obviously indicated that per Settlement Agreement, Defendant should not inquire into the Plaintiff's eligibility for past and continued disability benefits. (See Exhibit 4)

93. In the letter dated December 11, 2002, Plaintiff respectfully requested Defendant to honor their agreement in accordance with the Settlement Agreement. (See Exhibit 4)

94. Defendant consciously ignored the letter of December 11, 2002 from Plaintiff's wife.

95. Despite Plaintiff's letter dated December 11, 2002, Defendant continued to display the intent of recklessly disregarding Defendant's contractual duty of complying with the Section 3 of the Settlement Agreement in relation to the terms that Defendant agreed not to inquire into Plaintiff's eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit. (See Exhibit 2 and Exhibit 4)

96. From December 2002 through January 2005, Plaintiff through Plaintiff's wife had continually and diligently tried the best effort to communicate with Defendant via phone so as to prevent Defendant from breaching the Settlement Agreement.

97. Plaintiff did not receive any letter from Defendant in response to Plaintiff's [through Plaintiff's wife] letter dated December 11, 2002.

98. Plaintiff felt weak, sick and helpless, and became worse due to Defendant's inaction of resolving the issues during the past two years.

99. Despite the facts that Defendant was explicitly reminded and informed by Plaintiff of the existence of the Settlement Agreement on December 11, 2002, and that Plaintiff's wife had diligently and continually requested Defendant to investigate the possible breaching the Section 3 of the Settlement Agreement for the past two years,

Defendant's repeatedly, consciously and completely ignoring the respectful and continual requests of Plaintiff's wife undoubtedly demonstrated that Defendant's disregard of possibly breaching the terms of Section 3 of the Settlement Agreement was a willful and deliberate act and not a negligence because Defendant as a big corporation had not only the means of resolving the issues raised by Plaintiff's letter of December 11, 2002 within the period of two years but also the contractual obligations of complying with the terms in Section 3 of the Settlement Agreement.

100. At the time, Plaintiff needed more definitive proofs to allege that Defendant had consciously decided to commit a fraud in the inducement.

101. On or about January 9, 2005, Plaintiff was afraid that Defendant might have breached the Settlement Agreement.

102. On January 9, 2005, Plaintiff through Plaintiff's wife wrote and faxed a letter to Defendant. A copy of fax receipt, fax cover and Plaintiff's [through Plaintiff's wife] letter dated January 9, 2005 together with its enclosures is attached hereto as Exhibit 5.

103. In the letter of January 9, 2005, Plaintiff informed Defendant that Plaintiff was contractually entitled to receive Defendant's long-term disability benefits. (See Exhibit 5)

104. In the letter of January 9, 2005, Plaintiff explicitly informed Defendant of what terms were written under the Section 3 of the Settlement Agreement. (See Exhibit 5)

105. In the letter dated January 9, 2005, Plaintiff indicated that Plaintiff had continually and diligently tried the best effort to prevent Defendant from breaching the Settlement Agreement. (See Exhibit 5)

106. In the letter dated January 9, 2005, Plaintiff through Plaintiff's wife clearly stated that the dependants of Plaintiff were also contractually entitled to sign up for the other health and benefits plans while Plaintiff remained disabled. (See Exhibit 5)

107. On January 10, 2005, Plaintiff through Plaintiff's wife wrote and faxed a copy of Exhibit 5 together with a fax cover to Sheri Schlecht of Defendant's legal department at Schaumburg in County of Cook, Illinois. A copy of fax receipt and Plaintiff's [through Plaintiff's wife] fax cover dated January 10, 2005 is attached hereto as Exhibit 6.

108. On or about February 15, 2005, Plaintiff received a letter dated February 9, 2005 from Cathy M. Fladhammer of Defendant requesting a copy of the Settlement Agreement. A copy of Defendant's letter dated February 9, 2005 is attached hereto as Exhibit 7.

109. Despite the facts that Defendant was explicitly reminded and continually informed by Plaintiff of the existence of the Settlement Agreement since December 11, 2002, and that Plaintiff's wife had diligently and continually requested Defendant to investigate the possible breaching the Section 3 of the Settlement Agreement for the past two years, and that on January 10, 2005 Plaintiff faxed a copy of Exhibit 5 together with a fax cover to Sheri Schlecht of Defendant's legal department at Schaumburg in County of Cook in the State of Illinois, the letter dated February 9, 2005 from Cathy M. Fladhammer of Defendant requesting a copy of the Settlement Agreement had logically indicated that Defendant's continual disregard of possibly breaching the Section 3 of the Settlement Agreement was a willful and deliberate act and not a negligence because Defendant as a large high-tech communications corporation had not only the means of communicating amongst the different organizations of

Defendant regarding the existence of the Settlement Agreement, but also the abilities of ensuring that no organization of Defendant would breach the terms of the Settlement Agreement by negligence.

110.  On February 15, 2005, Plaintiff through Plaintiff's wife wrote and faxed a copy of the Settlement Agreement together with a fax cover to Cathy M. Fladhammer of Defendant's Benefits Review Committee. A copy of fax receipt and Plaintiff's [through Plaintiff's wife] fax cover dated February 15, 2005 is attached hereto as Exhibit 8.

111.  In order to ensure that Defendant would not have any excuse for consciously delaying the process of resolving the issues of possibly breaching the Section 3 of the Settlement Agreement, Plaintiff's wife not only faxed one copy of the Settlement Agreement together with a cover letter, but also mailed an additional copy of the Settlement Agreement together with a cover letter to Cathy M. Fladhammer of Defendant's Benefits Review Committee on or about February 15, 2005. A copy of Plaintiff's [through Plaintiff's wife] cover letter dated February 15, 2005 is attached hereto as Exhibit 9.

112.  On or about March 23, 2005, Plaintiff received a letter dated March 15, 2005 from Cathy M. Fladhammer of Defendant requesting a copy of the Settlement Agreement. A copy of Defendant's letter dated March 15, 2005 is attached hereto as Exhibit 10.

113.  Despite the facts that Defendant was explicitly reminded and continually informed by Plaintiff of the existence of the Settlement Agreement since December 11, 2002, and that Plaintiff's wife had diligently and continually requested Defendant to investigate the possible breaching the Section 3 of the Settlement Agreement for the past two

years, and that on January 10, 2005 Plaintiff faxed a copy of <u>Exhibit 5</u> together with a

fax cover to Sheri Schlecht of Defendant's legal department at Schaumburg in County

of Cook in the State of Illinois, and that Plaintiff's wife not only faxed but also mailed

a total of two separate copies of the Settlement Agreement together with two separate

cover letters to Cathy M. Fladhammer of Defendant's Benefits Review Committee on

or about February 15, 2005, the letter dated March 15, 2005 from Cathy M.

Fladhammer of Defendant requesting yet another copy of the Settlement Agreement

had undoubtedly and logically indicated that Defendant's continual disregard of

possibly breaching the Section 3 of the Settlement Agreement was obviously a willful

and deliberate act and not a negligence because Defendant as a large high-tech

communications corporation had not only the means of communicating amongst the

different organizations of Defendant regarding the existence of the Settlement

Agreement, but also the abilities of ensuring that no organization of Defendant would

breach the terms of the Settlement Agreement by negligence.

114.  On March 23, 2005, Plaintiff through Plaintiff's wife wrote and faxed a copy of the

Settlement Agreement together with a fax cover to Cathy M. Fladhammer of

Defendant's Benefits Review Committee. A copy of fax receipt and Plaintiff's

[through Plaintiff's wife] fax cover dated March 23, 2005 is attached hereto as <u>Exhibit</u>

<u>11</u>.

115.  In order to ensure that Defendant would not have any more excuses for consciously

delaying the process of resolving the issues of possibly breaching the Section 3 of the

Settlement Agreement, Plaintiff's wife, once again, not only faxed one copy of the

Settlement Agreement together with a cover letter, but also mailed an additional copy

of the Settlement Agreement together with a cover letter to Cathy M. Fladhammer of Defendant's Benefits Review Committee on or about March 23, 2005. A copy of Plaintiff's [through Plaintiff's wife] cover letter dated March 23, 2005 is attached hereto as Exhibit 12.

116. At that time, Plaintiff felt weak, sick, hopeless and helpless and became worse as a direct result of Defendant's willful and malicious misconducts.

117. On or about April 11, 2005, Plaintiff received a letter dated April 4, 2005 from Ron T. Miller as Corporate Vice President of Defendant. A copy of Defendant's letter dated April 4, 2005 is attached hereto as Exhibit 13.

118. In the letter dated April 4, 2005, Defendant told Plaintiff regarding Defendant's interpretation of Section 3 of the Settlement Agreement. (See Exhibit 13)

119. Defendant stated in the second paragraph of the letter dated April 4, 2005 as follows: "... As the designated fiduciary of the Plan for purposes of benefit appeals determination, the Benefits Review Committee [Defendant] has the exclusive discretion to determine eligibility for benefits [Defendant's long-term disability benefits] under the Plan." ("Second Paragraph Of Defendant's Letter Dated April 4, 2005") (See Exhibit 13)

120. Second Paragraph Of Defendant's Letter Dated April 4, 2005 implied that Defendant had inquired into Plaintiff's eligibility for past and continued disability benefits. (See Exhibit 2 and Exhibit 13)

121. Defendant stated in the third paragraph of the letter dated April 4, 2005 as follows: "After a thorough review... Within the settlement agreement, it is stated that in accordance to Section 3, *Coverage under Motorola's Benefits Plans*, of the General

Release and Settlement Agreement signed by James Ho [Plaintiff] on May 31, 2001,

James [Plaintiff] would continue to be covered under Motorola [Defendant] Long-

Term Disability and other health benefits plans *pursuant to the terms of the applicable*

*plans*, which therefore comply with section 3 of the settlement agreement. Application

of the provisions of Section 6.5 (h) of the Motorola Disability Income Plan were

permissible per the terms of the settlement agreement.") ("Defendant's Interpretation

Of Section 3 Of The Settlement Agreement As Of April 4, 2005") (See Exhibit 13)

122.   There were faults in Defendant's Interpretation Of Section 3 Of The Settlement
       Agreement As Of April 4, 2005.

123.   The noun *Plan* was omitted after the compound noun *Motorola Long-Term Disability*
       in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April
       4, 2005 whereas the noun *Plan* was being part of the compound noun *Motorola Long-*
       *Term Disability Plan* in the Section 3 of the Settlement Agreement. (See Exhibit 2 and
       Exhibit 13)

124.   Defendant omitted the noun *Plan* after the compound noun *Motorola Long-Term*
       *Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As
       Of April 4, 2005 to deceive Plaintiff. (See Exhibit 2 and Exhibit 13)

125.   Defendant omitted the noun *Plan* after the compound noun *Motorola Long-Term*
       *Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As
       Of April 4, 2005 so that Defendant's Interpretation Of Section 3 Of The Settlement
       Agreement As Of April 4, 2005 seemed more legitimate. (See Exhibit 2 and Exhibit
       13)

126. Defendant omitted the noun *Plan* after the compound noun *Motorola Long-Term Disability* in <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> to undermine Plaintiff's claims. (See <u>Exhibit 2</u> and <u>Exhibit 13</u>)

127. Defendant omitted the noun *Plan* after the compound noun *Motorola Long-Term Disability* in <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> to distort the representations that Rodina of Defendant had assured Plaintiff at the Settlement Meeting. (See <u>Exhibit 2</u> and <u>Exhibit 13</u>)

128. Defendant omitted the noun *Plan* after the compound noun *Motorola Long-Term Disability* in <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> so as to avoid paying what Defendant owed Plaintiff per the Settlement Agreement. (See <u>Exhibit 2</u> and <u>Exhibit 13</u>)

129. Defendant omitted the noun *Plan* after the compound noun *Motorola Long-Term Disability* in <u>Defendant's Interpretation Of Section 3 of the Settlement Agreement As Of April 4, 2005</u> in order to avoid complying with Section 3 of the Settlement Agreement. (See <u>Exhibit 2</u> and <u>Exhibit 13</u>)

130. Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> was a fraudulent act committed by Defendant to deceive Plaintiff.

131. Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> was intentional and not negligent in view of the facts that Rodina of Defendant had the knowledge of the proper interpretation of Section 3 of the Settlement Agreement, and that Defendant as a big corporation had the means of communicating

with Rodina to understand the proper interpretation of Section 3 of the Settlement

Agreement.

132.    Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in

Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4,

2005 was intentional and not negligent because Defendant as a big corporation had not

only the means of interpreting the proper meaning of Section 3 of the Settlement

Agreement, but also the abilities of understanding the proper meaning of Section 3 of

the Settlement Agreement.

133.    Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in

Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4,

2005 was intentional and not negligent in view of the facts that Defendant had already

spent more than two years on investigating and interpreting the Section 3 of the

Settlement Agreement since December 11 of 2002, and that Plaintiff had explicitly

informed Defendant of the terms of Section 3 of the Settlement Agreement in

Plaintiff's letters dated December 11,2002 and January 9, 2005 respectively. (See

Exhibit 3 and Exhibit 5)

134.    Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in

Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4,

2005 was intentional and not negligent in view of the facts that Defendant's

interpretation was a decision made by a group of executives participating in Benefits

Review Committee, and that Defendant's interpretation was deceitful because omitting

the noun *Plan* was material to the proper interpretation of the Section 3 of the

Settlement Agreement.

135. Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 was intentional and not negligent in view of the fact that Defendant's interpretation was made after *a thorough review* as being declared in Defendant's letter dated April 4, 2005. (See Exhibit 13)

136. Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 was intentional and not negligent in view of the fact that Defendant's interpretation was made after *a fair and full review* as being declared in Defendant's letters dated February 9, 2005 and March 15, 2005 respectively. (See Exhibit 7 and Exhibit 10)

137. Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 undoubtedly indicated that Defendant really wanted to consciously deceive Plaintiff regarding the proper interpretation of the ambiguity of the first sentence of the Section 3 of the Settlement Agreement.

138. In the letter dated April 4, 2005, Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 was semantically imperfect because the noun *Plan* should have been inserted after the compound noun *Motorola Long-Term Disability* as being stated in the second sentence of Section 3 of the Settlement Agreement. (See Exhibit 2 and Exhibit 13)

139. In the letter dated April 4, 2005, Defendant did not indicate that Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 was

truthfully based on the representations that Plaintiff and Linda Rodina of Defendant had agreed at the Settlement Meeting.

140. <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> was not based on the representations that Linda Rodina of Defendant had assured Plaintiff at the Settlement Meeting.

141. <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> was not truthfully derived from the terms on which Plaintiff and Rodina of Defendant had agreed at the Settlement Meeting.

142. In the letter dated April 4, 2005, Defendant informed Plaintiff that Defendant officially terminated all the benefits that Plaintiff and his dependents were contractually entitled to receive in the past due to the Settlement Agreement of the Lawsuit. (See <u>Exhibit 13</u>)

143. In the letter dated April 4, 2005, Defendant concluded that starting January 1, 2005, Defendant discontinued all benefits that Plaintiff and Plaintiff's family were contractually entitled to receive due to the Settlement Agreement of the Lawsuit. (See <u>Exhibit 13</u>)

144. Effective on January 1, 2005, Defendant willfully discontinued and terminated all the monetary and insurance benefits that Plaintiff and Plaintiff's family were contractually entitled to receive in accordance with the Section 3 of the Settlement Agreement of the Lawsuit.

145. Plaintiff felt devastated, weak, sick, hopeless and helpless and became worse as a direct result of Defendant's decision on terminating all the benefits that the Plaintiff and his dependents were contractually entitled to receive per the Settlement Agreement.

146.  At the time, Plaintiff needed definitive evidences to prove that Defendant had consciously decided to assert false representations at the Settlement Meeting to mislead Plaintiff to interpret the first sentence of the Section 3 of the Settlement Agreement as a compound sentence consisting of two separate representations.

147.  At the time, Plaintiff needed definitive evidences to prove that Defendant had consciously decided to exploit one interpretation of the ambiguous sentence in the Section 3 of the Settlement Agreement to fraudulently induce Plaintiff to enter into the Settlement Agreement to settle the Lawsuit and to defraud Plaintiff of Plaintiff's legal rights, and to exploit another interpretation of the ambiguous sentence in the Section 3 of the Settlement Agreement for the purpose of fabricating the capability of terminating Plaintiff's future participation for past and continued disability benefits after the settlement of the Lawsuit.

148.  At the time, Plaintiff needed definitive evidences to prove that Defendant's fraudulent interpretation on the ambiguous sentence in Section 3 of the Settlement Agreement was not due to negligence.

149.  At the time, Plaintiff needed definitive evidences to prove that Defendant's fraudulent interpretation on the ambiguous sentence in Section 3 of the Settlement Agreement as being asserted by Ron T. Miller Corporate Vice President of Defendant in the letter dated April 4, 2005 was intentional, willful and malicious.

150.  On April 12, 2005, Plaintiff through Plaintiff's wife wrote a fax cover letter and faxed a letter dated April 11, 2005 to Defendant. A copy of fax receipt, fax cover and Plaintiff's letter dated April 11, 2005 is attached hereto as Exhibit 14.

151.  In the letter dated April 11, 2005, Plaintiff informed Defendant that Plaintiff refused to accept <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u>. (See <u>Exhibit 14</u>)

152.  In the letter dated April 11, 2005, Plaintiff's wife informed Defendant of the terms on which Plaintiff and Rodina of Defendant had agreed at the Settlement Meeting. (See <u>Exhibit 14</u>)

153.  In the letter dated April 11, 2005, Plaintiff through Plaintiff's wife wrote to Defendant that Plaintiff "<u>sincerely hope that you [Ron T. Miller as Corporate Vice President of Defendant] will let your [Defendant's] Benefits Review Committee understand that the phrase *pursuant to the terms of the applicable plans* in the settlement agreement are [typo of is] only applicable to *other* health and benefits plans such as  Base Life Insurance Plan, Supplemental Life Insurance Plan, 401(k) Profit Sharing Plan and Pension Plan.</u>" ("<u>Plaintiff's Interpretation Of Section 3 Of The Settlement Agreement As Of April 11, 2005</u>") (See <u>Exhibit 14</u>)

154.  <u>Plaintiff's Interpretation Of Section 3 Of The Settlement Agreement As Of April 11, 2005</u> was truthfully based upon the representations that Rodina of Defendant had assured Plaintiff at the Settlement Meeting.

155.  <u>Plaintiff's Interpretation Of Section 3 Of The Settlement Agreement As Of April 11, 2005</u> was absolutely semantically correct.

156.  <u>Plaintiff's Interpretation Of Section 3 Of The Settlement Agreement As Of April 11, 2005</u> was truthfully derived from the factual events at the Settlement Meeting.

157. In or about June 13, 2005, Plaintiff received a letter dated June 6, 2005 from Ron T. Miller as Corporate Vice President of Defendant. A copy of Defendant's letter dated June 6, 2005 is attached hereto as Exhibit 15.

158. In Defendant's letter dated June 6, 2005, the middle of the second paragraph stated "The specific language of that Settlement Agreement, which you [Plaintiff] quoted in your letter, makes it clear that Mr. Ho's [Plaintiff's] future participation is *pursuant to the terms of the applicable plans.* Although you [Plaintiff] suggest that the language only applies to the plans *other* than the [Motorola Defendant] Disability Income Plan, the [Motorola Defendant] Disability Income Plan is one of the *applicable plans* specifically mentioned in that sentence." ("Rebutting Statement Of Defendant As Of June 6, 2005") (See Exhibit 15)

159. In Defendant's letter dated June 6, 2005, the near end of the second paragraph stated "Further, the conversations relating to the meaning of the agreement that you say occurred at the settlement agreement meeting in fact did not occur, if they had, would have been irrelevant in light of the Settlement Agreement's paragraph 14, which provides that it is *the complete understanding* and that other promises or agreements were not binding *unless signed in writing*." ("Denying Statement Of Defendant As Of June 6, 2005") (See Exhibit 15)

160. There were fraudulent flaws in Defendant's interpretation of Section 3 of the Settlement Agreement as being declared in the letter dated June 6, 2005. (See Exhibit 15)

161. In the letter dated June 6, 2005, Defendant falsely alleged (in Rebutting Statement Of Defendant As Of June 6, 2005) that the [Motorola] Disability Income Plan was one of

the applicable plans specifically mentioned in Section 3 of the Settlement Agreement.

(See Exhibit 15)

162.  [Motorola] Disability Income Plan was nowhere mentioned in Section 3 of the

Settlement Agreement. (See Exhibit 2)

163.  In the letter dated June 6, 2005, Ron T. Miller as Corporate Vice President of

Defendant dishonestly and fraudulently alleged (in Rebutting Statement Of Defendant

As Of June 6, 2005) that the [Motorola] Disability Income Plan was one of the

applicable plans specifically mentioned in Section 3 of the Settlement Agreement

because [Motorola] Disability Income Plan was nowhere mentioned in Section 3 of the

Settlement Agreement. (See Exhibit 2 and Exhibit 15)

164.  In the letter dated June 6, 2005, Defendant's interpretation (in Rebutting Statement Of

Defendant As Of June 6, 2005) that Mr. Ho's [Plaintiff's] future participation was

pursuant to the terms of the applicable plans had a serious semantic flaw, which was

material to the proper interpretation of the Section 3 of the Settlement Agreement. (See

Exhibit 15)

165.  In the letter dated June 6, 2005, Defendant's interpretation (in Rebutting Statement Of

Defendant As Of June 6, 2005) that Mr. Ho's [Plaintiff's] future participation was

pursuant to the terms of the applicable plans was undoubtedly questionable and

disputable due to a serious semantic flaw.

166.  In the letter dated June 6, 2005, Defendant's interpretation (in Rebutting Statement Of

Defendant As Of June 6, 2005) that Mr. Ho's [Plaintiff's] future participation was

pursuant to the terms of the applicable plans was fraudulent because Defendant's

interpretation was neither semantically nor logically equivalent to the representations that Rodina of Defendant had assured Plaintiff at the Settlement Meeting.

167.   In the letter dated June 6, 2005, Defendant's interpretation (in <u>Rebutting Statement Of Defendant As Of June 6, 2005</u>) that Mr. Ho's [Plaintiff's] future participation was pursuant to the terms of the applicable plans was fraudulent because Defendant's interpretation was not truthfully derived from the representations that Rodina of Defendant had assured Plaintiff at the Settlement Meeting.

168.   In the letter dated June 6, 2005, Defendant undoubtedly indicated (in <u>Rebutting Statement Of Defendant As Of June 6, 2005</u>) the intention of deceiving Plaintiff by emphatically making a false assertion and by consciously and repeatedly insisting a fraudulent interpretation on the ambiguity of the Ambiguous Sentence in the Section 3 of the Settlement Agreement. (See <u>Exhibit 13</u> and <u>Exhibit 15</u>)

169.   In the letter dated June 6, 2005, Defendant undoubtedly indicated (in <u>Denying Statement Of Defendant As Of June 6, 2005</u>) the intention of purposely and consciously ignoring the factual events that had actually occurred at the Settlement Meeting. (See <u>Exhibit 15</u>)

170.   In the letter dated June 6, 2005, Defendant undoubtedly indicated the intention to commit a fraud by repeatedly and emphatically insisting to exploit a false interpretation with a serious semantic flaw to deny all the benefits that Plaintiff was contractually entitled to receive per the Settlement Agreement. (See <u>Exhibit 13</u> and <u>Exhibit 15</u>)

171.   Regarding Judicial Reasoning, Maxims of Common Law stated that "*Words Should Be Interpreted Most Strongly Against Him Who Uses Them.*"

172. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation had plenty of time to understand Maxims of Common Law regarding Judicial Reasoning that "*Words Should Be Interpreted Most Strongly Against Him Who Uses Them.*" (See Exhibit 14 and Exhibit 15)

173. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation undoubtedly demonstrated the means of understanding Maxims of Common Law regarding Judicial Reasoning that "*Words Should Be Interpreted Most Strongly Against Him Who Uses Them.*" (See Exhibit 14 and Exhibit 15)

174. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation had the abilities of understanding that Defendant had the contractual duty of complying with the ambiguity of the terms of the Section 3 of the Settlement Agreement in a way that conformed to flawless semantics because Defendant had the Settlement Agreement written in accordance with Defendant's designs. (See Exhibit 14 and Exhibit 15)

175. Defendant knowingly and wrongfully breached the Section 3 of the Settlement Agreement and knowingly and wrongfully committed a fraudulent interpretation on the terms of the Section 3 of the Settlement Agreement in order to deceive Plaintiff. (See Exhibit 13, Exhibit 14 and Exhibit 15)

176. Defendant had the intent of breaching the Settlement Agreement and the intent of committing an unlawful fraud in view of the facts that Ron T. Miller as Corporate Vice

President of Defendant, who had the means to know and the abilities to interpret the proper meaning on the ambiguity of the Ambiguous Sentence in the Section 3 of the Settlement Agreement, emphatically, consciously and repeatedly insisted a false assertion and a fraudulent interpretation relating to the Section 3 of the Settlement Agreement. (See Exhibit 13 and Exhibit 15)

177. Defendant had the intent of breaching the Settlement Agreement and the intent of committing an unlawful fraud in view of the facts that Motorola [Defendant] as a big corporation, which had not only the duties of complying with the Section 3 of the Settlement Agreement but also the means of investigating the proper meaning on the ambiguity of the Ambiguous Sentence in the Section 3 of the Settlement Agreement, had kept on consciously ignoring Plaintiff's contractual rights of receiving the long-term disability benefits due to the settlement of the Lawsuit for more than two and half years after the receipt of Plaintiff's letter dated December 11, 2002. (See Exhibit 4)

178. Defendant had the intention of breaching the Settlement Agreement and the intention of committing an unlawful fraud so as to avoid paying what Defendant had owed Plaintiff due to the settlement of the Lawsuit.

179. At the time, Plaintiff had sufficient definitive evidences to prove that Defendant had consciously decided to assert false representations at the Settlement Meeting to mislead Plaintiff to interpret the first sentence of the Section 3 of the Settlement Agreement as a compound sentence consisting of two separate representations.

180. At the time, Plaintiff had sufficient definitive evidences to prove that Defendant had consciously decided to assert false representations at the Settlement Meeting to fraudulent induce Plaintiff to sign the Settlement Agreement.

181.  At the time, Plaintiff had sufficient definitive evidences to prove that Defendant had consciously decided to exploit one interpretation of the ambiguous sentence in the Section 3 of the Settlement Agreement to fraudulently induce Plaintiff to enter into the Settlement Agreement to settle the Lawsuit and to defraud Plaintiff of Plaintiff's legal rights, and to exploit another interpretation of the ambiguous sentence in the Section 3 of the Settlement Agreement for the purpose of fabricating the capability of terminating Plaintiff's future participation for past and continued disability benefits after the settlement of the Lawsuit.

182.  At the time, Plaintiff had sufficient definitive evidences to prove that Defendant's fraudulent interpretation on the ambiguous sentence in Section 3 of the Settlement Agreement was undoubtedly intended to avoid paying what Defendant owed Plaintiff due to the settlement of the Lawsuit.

183.  At the time, Plaintiff had sufficient definitive evidences to prove that Defendant's fraudulent interpretation on the ambiguous sentence in Section 3 of the Settlement Agreement as being emphatically and repeatedly asserted by Ron T. Miller Corporate Vice President of Defendant in the letters respectively dated April 4, 2005 and June 6, 2005 undoubtedly was intentional, willful, malicious and not negligent.

184.  At the time, Plaintiff felt devastated, weak, sick, hopeless and helpless and became worse as a direct result of Defendant's willful and malicious misconducts.

## COUNT I: BREACH OF CONTRACT

185.  Plaintiff re-alleges Paragraphs 1 through 185, inclusive, as this Paragraph 185 and incorporates each by reference as though each had been fully set forth herein.

186. The elements of the cause of action for "breach of contract" include: (1) existence of an enforceable contract, (2) acts of Defendant that constitute Defendant's breach of the contract, and (3) damages to Plaintiff resulting from Defendant's breach.

187. The Settlement Agreement constitutes an enforceable written contract under Common Law in Illinois.

188. Defendant as a big corporation had not only the means but also the abilities of understanding the common law governing the judicial decisions in relation to disputes on ambiguity of the terms of a written contract.

189. Defendant as a big corporation had not only the means but also the abilities of evaluating the legal impact of Defendant's planned conduct.

190. Defendant as a big corporation had not only the means but also the abilities of evaluating the legal impact of breaching the terms of the Settlement Agreement.

191. Defendant as a big corporation had not only the means but also the abilities of evaluating the legal impact of willful and malicious misconducts.

192. Defendant as a big corporation had not only the means but also the abilities of determining whether or not an English sentence was ambiguous.

193. Defendant as a big corporation had not only the means but also the abilities of determining whether or not the interpretation of an English sentence had a serious semantic flaw.

194. Defendant as a big corporation had not only the means but also the abilities of recognizing that an interpretation which had a serious semantic flaw with respect to the proper meaning of an ambiguous sentence was questionable and disputable.

195. Defendant as a big corporation understood that Defendant had the contractual obligations of complying all the terms of the Settlement Agreement after signing the Settlement Agreement.

196. Defendant as a big corporation had not only the means but also the duties of understanding all the terms of the Settlement Agreement.

197. Defendant as a big corporation had the means of understanding the proper interpretation on the terms in Section 3 of the Settlement Agreement.

198. Defendant was contractually obligated by Section 3 of the Settlement Agreement to not inquire into Plaintiff's eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit. (See Exhibit 2)

199. Without inquiring into Plaintiff's eligibility for past and continued disability benefits, Defendant would not be able to determine Plaintiff's eligibility for past and continued disability benefits.

200. Without the ability of determining Plaintiff's eligibility for past and continued disability benefits, Defendant would not be able to identify that Plaintiff was eligible for long-term disability benefits.

201. Without the ability of identifying that Plaintiff was eligible for long-term disability benefits, Defendant would not be able to identify that Plaintiff was a participant for long-term disability benefits.

202. In order to identify Plaintiff as a long-term disability participant, Defendant willfully breached the Section 3 of the Settlement Agreement by knowingly inquiring into Plaintiff's eligibility for past and continued disability benefits.

203.  In order to determine whether or not Plaintiff was eligibility for the same *past and continued* disability benefits in the future, Defendant had to breach the Section 3 of the Settlement Agreement by inquiring into Plaintiff's eligibility for the *past and continued* disability benefits because regardless of what the time was, Defendant agreed not to inquire into Plaintiff's eligibility for the same (*past and continued*) disability benefits based upon the [discrimination and retaliation] allegations made in the Lawsuit as long as the Settlement Agreement was enforceable. (See Exhibit 2)

204.  As a direct and proximate result of Defendant's willfully inquiring into Plaintiff's eligibility for past and continued benefits, Plaintiff and Plaintiff's dependents have suffered monetary damages in excess of US$1,000,000.00 and to endure many years of emotional and mental anguish.

205.  Furthermore, Defendant resorted to some cunning and fraudulent means to terminate Plaintiff's future participation for the *past and continued* disability benefits even though according to Section 3 of the Settlement Agreement, Defendant agreed not to contest that Plaintiff was eligibility for past and continued disability benefits in the future.

206.  Defendant exploited an ambiguous sentence in Section 3 of Settlement Agreement to terminate Plaintiff's future coverage for past and continued disability benefits. (See Exhibit 13, Exhibit 14 and Exhibit 15)

207.  The ambiguous sentence in Section 3 of the Settlement Agreement was "Ho [Plaintiff] will continue to be covered under Motorola' [Defendant's] long-term disability plan and other health and benefits plans pursuant to the terms of the applicable plans and based upon his ability to demonstrate that he is disabled." ("Ambiguous Sentence")

208. Plaintiff and Defendant had disputes on the proper interpretation of the Ambiguous Sentence in the Section 3 of the Settlement Agreement. (See Exhibit 13, Exhibit 14 and Exhibit 15)

209. Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence was truthfully derived from the factual events occurred at the Settlement Meeting.

210. Defendant's interpretation on the proper meaning of the Ambiguous Sentence was undoubtedly not derived from the factual events occurred at the Settlement Meeting.

211. Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence was absolutely semantically correct.

212. Defendant's interpretation on the proper meaning of the Ambiguous Sentence had a serious semantic flaw, which was material to the determination of whether or not Plaintiff's future coverage for the past and continued benefits was subject to Defendant's applicable plans.

213. Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence was truthfully based upon the representations that Rodina of Defendant had assured Plaintiff at the Settlement Meeting.

214. Defendant's interpretation on the proper meaning of the Ambiguous Sentence was knowingly and purposely not based upon the representations that Rodina of Defendant had assured Plaintiff at the Settlement Meeting.

215. Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence was logical and reasonable in view of the facts that the one-time amount of $20,500.00 was used up for paying Plaintiff's attorneys' fees and costs, and that the Ambiguous Sentence was semantically and logically equivalent to a compound sentence consisting

of two separate representations asserted by Rodina of Defendant at the Settlement Meeting.

216. Defendant's interpretation on the proper meaning of the Ambiguous Sentence undoubtedly led to an illogical and unreasonable conclusion, partly because Plaintiff had settled the Lawsuit and given up Plaintiff's other legal rights in exchange for the compensation (the past and continued disability benefits) that could become null at the exclusive discretion of Defendant and would possibly become null immediately after the settlement of the Lawsuit, and partly because Plaintiff had agreed on some Defendant's terms that had never been disclosed to Plaintiff and could be changed at the exclusive discretion of Defendant and would possibly be changed by Defendant at any time in the future.

217. Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence was justified by the representations asserted by Rodina of Defendant at the Settlement Meeting and reasonable in view of the factual events occurred at the Settlement Meeting.

218. Defendant's interpretation on the proper meaning of the Ambiguous Sentence was questionable and deceitful in view of the facts that according to Defendant's interpretation, Plaintiff had agreed on many invisible terms that could be changed at the exclusive discretion of Defendant and would possibly changed by Defendant at any time in the future.

219. One of the fundamental purposes of having a written contract was for both parties of the contract to see the explicitly specified terms of the contract.