220. The terms of Motorola [Defendant's] Disability Income Plan were nowhere mentioned in the Settlement Agreement.

221. The terms of Motorola [Defendant's] Long Term Disability Plan were nowhere mentioned in the Settlement Agreement.

222. Using Defendant's interpretation on the proper meaning of the Ambiguous Sentence would have unjustly defeated a fundamental purpose of having a written contract.

223. Defendant's interpretation on the proper meaning of the Ambiguous Sentence was intentionally deceitful in view of the facts that Motorola [Defendant's] Disability Income Plan was nowhere mentioned in the Settlement Agreement and that in the letter dated June 6, 2005, Defendant nevertheless alleged (in <u>Rebutting Statement Of Defendant As Of June 6, 2005)</u> that the [Motorola] Disability Income Plan was one of the applicable plans specifically mentioned in Section 3 of the Settlement Agreement. (See <u>Exhibit 15</u>)

224. Plaintiff fully performed Plaintiff's duty in accordance to the terms of the Settlement Agreement by settling the Lawsuit and by giving up Plaintiff's other legal rights.

225. Defendant willfully breached the terms of Section 3 of the Settlement Agreement in order to avoid paying Plaintiff the long-term disability benefits in accordance to the terms of the Section 3 of the Settlement Agreement by exploiting a fraudulent interpretation on the proper meaning of the Ambiguous Sentence in Section 3 of the Settlement Agreement.

226. Defendant willfully terminated the long-term disability benefits payments that Plaintiff was contractually entitled to receive per the terms of Section 3 of the Settlement Agreement.



FILED
NOVEMBER 30, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JUDGE MORAN
MAGISTRATE JUDGE ASHMAN

227. Defendant willfully denied the other health and benefits plans that Plaintiff and Plaintiff's dependents were contractually entitled to receive while Plaintiff was disabled.

228. Defendant was explicitly informed and was able to understand that terminating Plaintiff's long-term disability benefits and all the medical and dental benefits of Plaintiff's dependents could hurt and would maliciously hurt Plaintiff and Plaintiff's family both financially and emotionally. (See Exhibit 5)

229. Plaintiff is informed and believes in good faith, and based thereon alleges, that Defendant has willfully breached the Settlement Agreement in order to inflict severe harms to Plaintiff, Plaintiff's health and Plaintiff's family.

230. As a direct and proximate result of Defendant's unlawful breach of the Settlement Agreement, Plaintiff and Plaintiff's dependents have suffered substantial and irreparable injury, loss of income and other monetary and insurance benefits; Plaintiff has also suffered and will continue to suffer, irreparable injury, including physical, emotional and mental anguish, embarrassments and damage to Plaintiff's reputation.

231. Despite Defendant's knowledge that breaching a contract is a violation of the law, Defendant consciously and willfully breached the Section 3 of the Settlement Agreement since the receipt of Plaintiff's letter dated December 10, 2002. (See Exhibit 4)

232. Despite Defendant's knowledge that willfully and maliciously inflicting emotional and mental harms to Plaintiff is a violation of the law, Defendant knowingly and maliciously inflicted emotional and mental harms to Plaintiff and Plaintiff's family by wrongfully terminating all monetary and insurance benefits that Plaintiff and Plaintiff's

family were contractually entitled to receive per the Settlement Agreement. (See

Exhibit 5)

233.  Due to the facts that Defendant as a big corporation had the means to understand the

law and that Defendant knowingly and wrongfully breached the Settlement Agreement

in a willful and malicious way, which caused Plaintiff and Plaintiff's family to suffer

substantial damages both financially, mentally and emotionally as a direct and

proximate result of Defendant's misconducts, Plaintiff is therefore entitled to punitive

damages based upon the Defendant's intentional and/or reckless disregard of the law.

234.  By willfully breaching the Section 3 of the Settlement Agreement, Defendant has

directly and proximately caused Plaintiff to suffer monetary damages in excess of

$1,000,000.00 and to endure many years of emotional and mental anguish.

**Plaintiff demands a trial by jury on all claims.**

**Wherefore,** the Plaintiff, JAMES C. HO, respectfully prays this Honorable Court for entry of

Judgment in his favor and against the Defendant, MOTOROLA INC., by granting the following

relief as to Count I and by entering an Order requiring Defendant to pay Plaintiff:

(i)    an amount exceeding $1,000,000.00,

(ii)   court costs,

(iii)  costs of this action, including his reasonable attorney's fees,

(iv)   compensatory and punitive damages in the amount allowed by law,

(v)    the acceleration payments of the long-term disability benefits,

(vi)   the acceleration payments of the other health and benefits that Plaintiff and Plaintiff's

dependent would receive in the future,

(vii)  prejudgment interest on all of the above amounts, and

(viii)  such further and additional relief that this Honorable Court deems fair, equitable, and just.

## COUNT II: FRAUD IN THE INDUCEMENT

235.  Plaintiff re-alleges Paragraphs 1 through 235, inclusive, as this Paragraph 235 and incorporates each by reference as though each had been fully set forth herein.

236.  The elements of the cause of action for "fraud in the inducement" include: (1) Defendant made knowingly false statements to Plaintiff, (2) The statements were made with the intent to deceive, (3) The statements were material to Plaintiff's decision to sign the agreement, (4) At the time Defendant made the statements, Defendant knew the statements were false or misleading, (5) Defendant meant for Plaintiff to rely on the statements, (6) Plaintiff did not know the statements were misleading or false, (7) Plaintiff reasonably relied on the statements, (8) Plaintiff's reliance was justified, and (9) Plaintiff suffered economic damages from entering into the agreement after being persuaded to do so by the lies of Defendant.

237.  "Fraud In The Inducement" constitutes actionable fraud under Common Law in Illinois.

238.  Defendant as a big corporation had not only the means of understanding but also the abilities of evaluating the legal impact of committing fraud in the inducement.

239.  Defendant as a big corporation had not only the means of understanding but also the abilities of evaluating the elements of cause of action for fraud in the inducement under the common law.

240. Defendant as a big corporation had not only the means but also the abilities of determining whether or not the terms of Section 3 of the Settlement Agreement were ambiguous.

241. Defendant as a big corporation had not only the means but also the abilities of constructing and/or writing the terms of Section 3 of the Settlement Agreement in an undisputable way.

242. Defendant as a big corporation had not only the means but also the abilities of recognizing that the terms of Section 3 of the Settlement Agreement must be written and/or constructed in an undisputable way.

243. Defendant as a big corporation had not only the means but also the abilities of recognizing that the terms of Section 3 of the Settlement Agreement were ambiguous.

244. Defendant as a big corporation had not only the means but also the abilities of determining whether or not an interpretation on the proper meaning of the Ambiguous Sentence in the Section 3 of the Settlement Agreement had a serious semantic flaw.

245. Defendant as a big corporation had not only the means but also the abilities of recognizing that an interpretation that had a serious semantic flaw on the proper meaning of the Ambiguous Sentence in the Section 3 of the Settlement Agreement was questionable and disputable.

246. Defendant as a big corporation had not only the means but also the abilities of determining whether or not an interpretation on the proper meaning of the Ambiguous Sentence in the Section 3 of the Settlement Agreement would lead to an illogical and unreasonable conclusion.

247. Defendant as a big corporation had not only the means but also the abilities of recognizing that an interpretation that would lead to an illogical and unreasonable conclusion with respect to the proper meaning of the Ambiguous Sentence in the Section 3 of the Settlement Agreement was questionable and disputable.

248. Defendant as a big corporation had not only the means but also the abilities of recognizing that an interpretation which not only had a serious semantic flaw but also would lead to an illogical and unreasonable conclusion with respect to the proper meaning of the Ambiguous Sentence in the Section 3 of the Settlement Agreement was not only artificially ambiguous and deceptive but also devious and deceitful.

249. Ron T. Miller as Corporate Vice President of Defendant demonstrated the intent of exploiting the Ambiguous Sentence for the purpose of deceiving Plaintiff by consciously and repeatedly insisting that the terms of the Section 3 of the Settlement Agreement should be interpreted based upon a devious and deceitful semantics so as to make the terms to become artificially ambiguous and deceptive for the purpose of fabricating the capability of terminating the past and continued disability benefits that Plaintiff was contractually entitled to receive due to the settlement of the Lawsuit. (See Exhibit 13 and Exhibit 15)

250. Motorola [Defendant] had the duties of presenting accurate and complete information to Plaintiff at the Settlement Meeting with respect to Defendant's offers, which were material to settle the Lawsuit.

251. At the time of the Lawsuit settlement, Rodina was the Human Resource Director of Motorola's [Defendant's] IDEN organization, to which Plaintiff belonged.

252. At the time of the Lawsuit settlement, Rodina was highly regarded as an authoritative Human Resource Director of Defendant.

253. Rodina as Human Resource Director of Defendant was a reasonable person of intelligence, which was at or above the level of average people.

254. While Plaintiff was working as a software engineering section manager at IDEN organization of Defendant, Rodina knew that Plaintiff was a reasonable person of intelligence, which was at or above the level of average people.

255. Rodina as Human Resource Director of Defendant had the abilities of understanding the duties of being a settlement representative of Defendant.

256. Rodina as Human Resource Director of Defendant had the abilities of understanding the ethical duties of presenting what Defendant at the Settlement Meeting would offer.

257. Rodina as the Human Resource Director of IDEN organization had the knowledge of Plaintiff's past and continued participation in receiving Motorola [Defendant's] long-term disability benefits.

258. Rodina as the Human Resource Director of IDEN organization had the knowledge that Plaintiff financially depended on Motorola's [Defendant's] long-term disability benefits.

259. Rodina as Human Resource Director of Defendant had to comprehend Motorola's [Defendant's] intention of the offers, which were material to settle the Lawsuit.

260. Rodina as Human Resource Director of Defendant had to be prepared for making Motorola's [Defendant's] offers, which were material to settle the Lawsuit.

261. Rodina as Human Resource Director of Defendant had not only the abilities but also the means of understanding the intention of Motorola's [Defendant's] offers, which were material to settle the Lawsuit.

262. Rodina as the Human Resource Director of IDEN organization of Defendant had the knowledge that Plaintiff's future participation in receiving Motorola [Defendant's] long-term disability benefits was material to settle the Lawsuit.

263. Based on the Ambiguous Sentence written in the Section 3 of the Settlement Agreement, it was reasonable and logical to conclude that Rodina of Defendant had beforehand at least two choices of making the representations of Defendant's offers, which Rodina was going to present to Plaintiff at the Settlement Meeting for the purpose of settling the Lawsuit.

264. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already and calculatingly decided the offers, which Defendant was going to present to Plaintiff during the Settlement Meeting.

265. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already comprehended the knowledge of what could affect and would possibly affect Plaintiff's future participation in receiving the long-term disability benefits in the future.

266. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already decided to not reveal the fact that Motorola's [Defendant's] Disability Income Plan could affect Motorola's [Defendant's] Long Term Disability Plan in a way that would affect Plaintiff's future participation in receiving long-term disability benefits in the future.

267. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already decided to not disclose the fact that the terms of Motorola [Defendant's] Disability Income Plan could affect the terms of Motorola's [Defendant's] Long Term Disability Plan in a way that would affect Plaintiff's future participation in receiving long-term disability benefits in the future.

268. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already comprehended the knowledge that Defendant could change and would possibly change Motorola's [Defendant's] Disability Income Plan at the exclusive discretion of Defendant in the future because Motorola [Defendant] was the administer of Motorola's [Defendant's] Disability Income Plan.

269. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already comprehended the knowledge that Defendant could change and would possibly change Motorola's [Defendant's] Long Term Disability Plan at the exclusive discretion of Defendant in the future because Motorola [Defendant] was the administer of Motorola's [Defendant's] Long Term Disability Plan.

270. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already decided to conceal the fact that any future changes in the terms of Motorola's [Defendant's] Disability Income Plan could affect Plaintiff's future participation in receiving long-term disability benefits in the future.

271. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already decided to conceal the fact that any future changes in the terms of Motorola's [Defendant's] Long Term Disability Plan could affect Plaintiff's future participation in receiving long-term disability benefits in the future.

272. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already decided to mislead Plaintiff by making a false representation that Plaintiff would continue to be covered under Motorola's [Defendant's] Long Term Disability Plan provided that Plaintiff settled the Lawsuit.

273. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already decided to mislead Plaintiff by making a false representation that Plaintiff's coverage for long-term disability benefits would become unconditional provided that Plaintiff settled the Lawsuit.

274. At the Settlement Meeting, Rodina as Human Resource Director of Defendant had already decided to trick Plaintiff into thinking that the phrase *pursuant to the terms of the applicable plans and based upon Plaintiff's ability to demonstrate that Plaintiff was disabled* was only applicable to *other health and benefits plans* by saying to Plaintiff that Plaintiff would continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans and based upon Plaintiff's ability to demonstrate that Plaintiff was disabled.

275. At the Settlement Meeting, Plaintiff reasonably and justifiably relied on the false representations asserted by Rodina of Defendant to agree to settle the Lawsuit and to give up Plaintiff's other legal rights in view of the facts that Rodina not only was the Human Resource Director of IDEN organization of Defendant, but also was highly and respectably regarded as an authoritative Human Resource Director at Motorola [Defendant].

276.  It is against common senses that Plaintiff willingly settled the Lawsuit and gave up

Plaintiff's many other legal rights in exchange for nothing because the one-time

amount $20,500.00 was used up for paying Plaintiff's attorney's fees and costs.

277.  It is against common senses that at the Settlement Meeting, Plaintiff willingly accepted

Defendant's interpretation of Section 3 of the Settlement Agreement that Motorola's

[Defendant's] Disability Income Plan was one of the applicable plans, because

Defendant could have terminated Plaintiff's long-term disability benefits by changing

the terms of Defendant's Disability Income Plan immediately after Plaintiff had settled

the Lawsuit.

278.  It is against common senses that Plaintiff willingly settled the Lawsuit and gave up

Plaintiff's many other legal rights in exchange for Defendant's long-term disability

benefits that Defendant could terminate at the exclusive discretion of Defendant

immediately after the settlement of the Lawsuit, because Defendant could have

changed the terms of Defendant's long-term disability plan immediately after the

settlement of the Lawsuit for the purpose of terminating Plaintiff's coverage for past

and continued disability benefits.

279.  It is not hard to recognize that an interpretation which not only had a serious semantic

flaw but also would lead to an illogical and unreasonable conclusion with respect to the

proper meaning of the Ambiguous Sentence in the Section 3 of the Settlement

Agreement was artificially ambiguous and deceptive.

280.  It is not hard to recognize that one party who consciously and purposely kept on

insisting an interpretation which not only had a serious semantic flaw but also would

lead to an illogical and unreasonable conclusion with respect to the proper meaning of

the Ambiguous Sentence in the Section 3 of the Settlement Agreement intended to take

advantage of the artificially ambiguous and deceptive interpretation.

281.  It is not hard to recognize that one party who consciously and purposely kept on

insisting an interpretation which not only had a serious semantic flaw but also would

lead to an illogical and unreasonable conclusion with respect to the proper meaning of

the Ambiguous Sentence in the Section 3 of the Settlement Agreement intended to

exploit the other party by devious and deceitful means.

282.  It is not hard to recognize that one party who consciously and purposely kept on

insisting an interpretation which not only had a serious semantic flaw but also would

lead to an illogical and unreasonable conclusion with respect to the proper meaning of

the Ambiguous Sentence in the Section 3 of the Settlement Agreement demonstrated

the intent of calculatingly and dishonestly exploiting the other party.

283.  Defendant's interpretation on the proper meaning of the terms of Section 3 of the

Settlement Agreement was undoubtedly purely fraudulent because Defendant's

interpretation was solely based upon a devious and deceitful semantics so as to make

the terms of Section 3 of the Settlement Agreement to become artificially ambiguous

and deceptive for the sake of fabricating the capability of terminating the past and

continued disability benefits that Plaintiff was contractually entitled to receive due to

the settlement of the Lawsuit.

284.  Defendant's fraudulent interpretation on the proper meaning of the terms of Section 3

of the Settlement Agreement must be planned beforehand partly because Defendant

undoubtedly demonstrated to have calculatingly and inflexibly decided to emphatically

and dishonestly assert an unreasonable and illogical interpretation that was not only

solely based upon a devious and deceitful semantics but also merely intended to make the terms of the Section 3 of the Settlement Agreement to become artificially ambiguous and deceptive for the sake of fabricating the capability of terminating Plaintiff's coverage for the past and continued disability benefits in the future, and partly because Defendant was undoubtedly given not only plenty of time but also opportunities to thoroughly evaluate the legal impact of intentionally and recklessly disregarding the Maxims of the common law with respect to the proper interpretation of the terms of the Section 3 of the Settlement Agreement, and partly because Defendant undoubtedly demonstrated to have completely and consciously ignored the facts that Plaintiff's interpretation on the terms of Section 3 of the Settlement Agreement was semantically and logically equivalent to the representations asserted by Rodina of Defendant at the Settlement Meeting, and partly because Defendant as a big corporation had not only the means but also the abilities of constructing the terms of Section 3 of the Settlement Agreement in an undisputable way, and partly because it was, as a matter of fact, not difficult to write the terms of the Section 3 of the Settlement Agreement in a way that was explicit, undisputable, unquestionable and semantically flawless, and partly because Defendant undoubtedly demonstrated to have calculatingly, dishonestly and unjustly taken advantage of the Ambiguous Sentence in the Section 3 of the Settlement Agreement for the purpose of not having to pay all the future disability benefits payments that Plaintiff was contractually entitled to receive due to the settlement of the Lawsuit, and partly because Defendant undoubtedly demonstrated the intent of deceiving Plaintiff on numerous occasions with respect to the meaning of the terms of Section 3 of the Settlement Agreement even though

Defendant not only had already spent more than two years on resolving the issues

concerning the terms of Section 3 of the Settlement Agreement after receiving

Plaintiff's letter dated December 11, 2002 but also had many opportunities of having

some talented professionals conduct and/or perform numerous full and thorough

reviews with respect to the proper meaning of the terms of the Section 3 of the

Settlement Agreement, and partly because Plaintiff had informed Defendant of the

proper interpretation of the Ambiguous Sentence but nevertheless Defendant

persistently and unjustly intended to exploit the deceitful interpretation of the

Ambiguous Sentence despite the obvious semantic flaw that was material to the

determination of the proper interpretation of the Ambiguous Sentence, and last but not

least because Defendant had the terms of the Settlement Agreement written in

accordance with Defendant's design.

285. Defendant undoubtedly demonstrated the intent of deceiving Plaintiff by calculatingly

exploiting a planned fraudulent interpretation on the terms of the Section 3 of the

Settlement Agreement for the purpose of not having to pay all the future benefits

payments that Defendant had owed Plaintiff due to the settlement of the Lawsuit.

286. At the Settlement Meeting, Rodina of Defendant calculatingly decided to take

advantage of the fact that Plaintiff would agree to settle the Lawsuit in exchange for

the long-term disability benefits that Plaintiff would continue to receive in the future.

287. At the Settlement Meeting, Plaintiff had no reason to suspect that Rodina of

Defendant, who was highly and respectably regarded as an authoritative Human

Resource Director at Motorola [Defendant], had consciously decided to lie to Plaintiff.

288. At the time of signing the Settlement Agreement, Plaintiff had no reason to suspect that at the Settlement Meeting Rodina of Defendant had consciously decided to defraud Plaintiff of Plaintiff's legal rights because Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence of Section 3 of the Settlement Agreement was justifiable and absolutely semantically correct in terms of matching the fraudulent representations asserted by Rodina of Defendant at the Settlement Meeting with the terms that were written in the Section 3 of the Settlement Agreement.

289. At the time of signing the Settlement Agreement, Plaintiff had no reason to suspect that at the Settlement Meeting Rodina of Defendant had consciously decided to induce Plaintiff to enter into the Settlement Agreement because Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence of Section 3 of the Settlement Agreement was reasonable and justified in view of the facts that Plaintiff had to settle the Lawsuit in order to exchange for Defendant's long-term disability benefits that Plaintiff would continue to receive in the future.

290. Plaintiff subconsciously interpreted the Ambiguous Sentence of Section 3 of the Settlement Agreement as a compound sentence consisting of two separate sentences joining together by a conjunction *And* because of the misrepresentations being consciously asserted by Rodina of Defendant at the Settlement Meeting.

291. Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in Section 3 of the Settlement Agreement had no semantic flaw.

292. Defendant's interpretation on the proper meaning of the Ambiguous Sentence of Section 3 of the Settlement Agreement had a serious semantic flaw, which was

material to the determination on the proper meaning of the ambiguity of the Ambiguous Sentence.

293.  Defendant's interpretation on the proper meaning of the Ambiguous Sentence of Section 3 of the Settlement Agreement was illogical because Defendant's interpretation undoubtedly led an illogical conclusion that Plaintiff willingly gave up Plaintiff's legal rights in exchange for Defendant's long-term disability benefits that Defendant could terminate at the exclusive discretion of Defendant immediately after the settlement of the Lawsuit.

294.  Defendant's interpretation on the proper meaning of the Ambiguous Sentence in Section 3 of the Settlement Agreement was deceitful because Defendant's assertion that Motorola's [Defendant's] Disability Income Plan was one of the *applicable plans* specifically mentioned in the first sentence of Section 3 of the Settlement Agreement was not only deceitfully incorrect but also indicated that Rodina of Defendant had really decided to purposely conceal at the Settlement Meeting some important information, which was material to settle the Lawsuit. (See Exhibit 15)

295.  Defendant's fraudulent interpretation on the proper meaning of the Ambiguous Sentence in Section 3 of the Settlement Agreement undoubtedly demonstrated that at the Settlement Meeting, Rodina of Defendant had decided to purposely mislead Plaintiff by consciously using one independent sentence to assure Plaintiff that "Plaintiff would continue to be covered under Motorola's [Defendant's] long-term disability plans provided that Plaintiff settled the Lawsuit" (Defendant's Representation #1). (See Exhibit 13 and Exhibit 15)

296. In addition, Defendant's fraudulent interpretation on the proper meaning of the Ambiguous Sentence in Section 3 of the Settlement Agreement undoubtedly demonstrated that at the Settlement Meeting, Rodina of Defendant had decided to purposely mislead Plaintiff by consciously using another independent sentence to tell Plaintiff that "Plaintiff would continue to be covered under other health and benefits plans pursuant to the terms of the applicable plans and based upon Plaintiff's ability to demonstrate that Plaintiff was disabled" (Defendant's Representation #2). (See Exhibit 13 and Exhibit 15)

297. The Ambiguous Sentence of Section 3 of the Settlement Agreement could be purposely constructed by joining Defendant's Representation #1 and Defendant's Representation #2 together with a conjunction *And* after Plaintiff had agreed to settle the Lawsuit.

298. Defendant undoubtedly demonstrated the intent of committing a fraudulent act by consciously omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005. (See Exhibit 13)

299. Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 was undoubtedly intentional and not negligent in view of the facts that Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 was asserted and concluded by a group of executive staff of Defendant after *a thorough review* and *a fair and full review* as being declared in Defendant's letters. (See Exhibit 8,  Exhibit 10 and Exhibit 13)

300. Omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005 was undoubtedly intentional and not negligent in view of the facts that Defendant had already spent more than two years and four months on investigating and interpreting Section 3 of the Settlement Agreement since the receipt of Plaintiff's letter dated December 10,2002. (See Exhibit 4 and Exhibit 13)

301. Defendant undoubtedly demonstrated the intent of creating a fraudulent interpretation on the proper meaning of the Ambiguous Sentence of Section 3 of the Settlement Agreement by consciously omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation of Section 3 of the Settlement Agreement As Of April 4. (See Exhibit 13)

302. By fraudulently omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005, Defendant's interpretation on the proper meaning of the Ambiguous Sentence of Section 3 of the Settlement Agreement falsely, dishonestly and deceitfully became more authoritative. (See Exhibit 2 and Exhibit 13)

303. By fraudulently and intentionally omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005, Defendant undoubtedly demonstrated that Defendant was well aware the important role of the noun *Plan*, which was material to the cause of ambiguity of the first sentence of Section 3 of the Settlement Agreement. (See Exhibit 2 and Exhibit 13)

304. By fraudulently and intentionally omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005, Defendant undoubtedly demonstrated that Defendant was well aware of the cause of ambiguity of the first sentence of Section 3 of the Settlement Agreement. (See Exhibit 2 and Exhibit 13)

305. By fraudulently and intentionally omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005, Defendant undoubtedly demonstrated that Defendant was well aware of the existence of ambiguity of the first sentence of Section 3 of the Settlement Agreement. (See Exhibit 2 and Exhibit 13)

306. By fraudulently and intentionally omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005, and by having someone write the terms of the Settlement Agreement in accordance with Defendant's design, and by emphatically, dishonestly, deceitfully and repeatedly insisting on the fraudulent interpretation on the terms of Section 3 of the Settlement Agreement, and by consciously and completely ignoring the existence of the Ambiguous Sentence in the Section 3 of the Settlement Agreement in Defendant's letters respectively dated April 4, 2005 and June 6, 2005 despite the fact that in the letter dated April 11, 2005 Plaintiff informed Defendant of Plaintiff's proper interpretation of the Ambiguous Sentence, Defendant demonstrated not only the intent of purposely constructing an ambiguous sentence in the Section 3 of the Settlement Agreement but also the intent of unjustly exploiting the ambiguity of the Ambiguous Sentence in the Section 3 of the Settlement

Agreement for the purpose of defrauding Plaintiff of Plaintiff's legal rights. (See

Exhibit 13, Exhibit 14 and Exhibit 15)

307. By fraudulently and intentionally omitting the noun *Plan* after the compound noun

*Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The

Settlement Agreement As Of April 4, 2005, Ron T. Miller as Corporate Vice President

of Defendant together with a group of Defendant's executives exposed the indisputable

evidence that Defendant's interpreting alone the meaning of the terms of the Section 3

of the Settlement Agreement did not have required the necessary existence of the noun

*Plan* as part of the compound noun *Motorola Long-Term Disability Plan* in the

Ambiguous Sentence of Section 3 of the Settlement Agreement and hence the noun

*Plan* was calculatingly and strategically placed in the Ambiguous Sentence of the

Section 3 of the Settlement Agreement for the purpose of having Plaintiff

subconsciously interpret the Ambiguous Sentence as a compound sentence of joining

two of the three representations asserted by Rodina of Defendant at the Settlement

Meeting, and last but not least that having calculatingly and deliberately decided to

include the noun *Plan* as part of the compound noun *Motorola Long-Term Disability*

*Plan* in the Ambiguous Sentence of Section 3 of the Settlement Agreement, Defendant

undoubtedly demonstrated that the Ambiguous Sentence was cunningly constructed to

be artificially ambiguous and deceptive for the purpose of fabricating the capability of

terminating Plaintiff's coverage for the past and continued disability benefits in the

future. (See Exhibit 2 and Exhibit 13)

308. In addition, by fraudulently and intentionally omitting the noun *Plan* after the

compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of

Section 3 Of The Settlement Agreement As Of April 4, 2005, Ron T. Miller as

Corporate Vice President of Defendant together with a group of Defendant's

executives cunningly intended to deceive Plaintiff because Plaintiff might not be able

to recall as many years had passed since the Settlement Meeting that the Ambiguous

Sentence of Section 3 of the Settlement Agreement had been a compound sentence of

joining two of the three representations asserted by Rodina of Defendant at the

Settlement Meeting. (See Exhibit 2 and Exhibit 13)

309.   Furthermore, by fraudulently and intentionally omitting the noun *Plan* after the

compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of

Section 3 Of The Settlement Agreement As Of April 4, 2005, Ron T. Miller as

Corporate Vice President of Defendant together with a group of Defendant's

executives cunningly intended to deceive Plaintiff because the Ambiguous Sentence

without the noun *Plan* being included as part of the compound noun *Motorola Long-*

*Term Disability Plan* in the Section 3 of the Settlement Agreement could no longer be

interpreted as a compound sentence of joining two of the three representations asserted

by Rodina of Defendant at the Settlement Meeting. (See Exhibit 2 and Exhibit 13)

310.   The terms of Section 3 of the Settlement Agreement had to be derived from the

representations asserted by Rodina of Defendant at the Settlement Meeting.

311.   The terms of Section 3 of the Settlement Agreement had to be logically equivalent to

the representations asserted by Rodina of Defendant at the Settlement Meeting.

312.   The terms of Section 3 of the Settlement Agreement had to be semantically equivalent

to the representations asserted by Rodina of Defendant at the Settlement Meeting.

313. The terms of Section 3 of the Settlement Agreement were material to the settlement of the Lawsuit.

314. Defendant undoubtedly demonstrated the intent of purposely and consciously creating a sentence structure for the sake of deceiving Plaintiff by fraudulently, consciously and intentionally omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in <u>Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005</u> in order to falsely create an authoritative interpretation on the Ambiguous Sentence in Section 3 of the Settlement Agreement. (See <u>Exhibit 13</u>)

315. Defendant as a big corporation had the means of having the terms of the Section 3 of the Settlement Agreement written by a professional in an undisputable way, which was semantically flawless.

316. It was not hard to write the terms of the Section 3 of the Settlement Agreement in an undisputable way, which was semantically flawless.

317. It was not hard to write the terms of the Section 3 of the Settlement Agreement in an undisputable way, which was both semantically and logical equivalent to the representations asserted by Rodina of Defendant at the Settlement Meeting.

318. It was not hard to understand the reasons why the terms of the Section 3 of the Settlement Agreement should be written in an undisputable way, which was semantically flawless.

319. It was not hard to understand the reasons why the terms of the Section 3 of the Settlement Agreement should be truthfully derived from the representations asserted by Rodina of Defendant at the Settlement Meeting.

320. Defendant as a big corporation had not only the means but also the abilities of understanding that the Ambiguous Sentence in the Section 3 of the Settlement Agreement could be interpreted in two ways, of which one conformed to flawless semantics whereas another had a serious semantic flaw.

321. Defendant as a big corporation had not only the means but also the abilities of writing the terms of the Section 3 of the Settlement Agreement in an undisputable way that conformed to flawless semantics.

322. Based on the fact that Defendant had the Settlement Agreement written in accordance with Defendant's designs, Defendant as a big corporation had the contractual duty of complying with the terms of the Section 3 of the Settlement Agreement in a way that conformed to flawless semantics.

323. Before signing the Settlement Agreement, Defendant as a big corporation had not only plenty of time but also opportunities to recognize the ambiguity of the terms of the Section 3 of the Settlement Agreement.

324. Before signing the Settlement Agreement, Defendant as a big corporation had not only the means but also the abilities of recognizing the ambiguity of the terms of the Section 3 of the Settlement Agreement

325. Before signing the Settlement Agreement, Defendant as a big corporation had not only plenty of time but also opportunities to ensure that the representations asserted by Rodina of Defendant at the Settlement Meeting had to be semantically and logical matching the terms written in the Section 3 of the Settlement Agreement.

326. Before signing the Settlement Agreement, Defendant as a big corporation had not only plenty of time but also opportunities to ensure that the terms written in the Section 3 of

the Settlement Agreement had to be truthfully derived from the representations asserted by Rodina of Defendant at the Settlement Meeting.

327.  Before signing the Settlement Agreement, Defendant as a big corporation had not only plenty of time but also opportunities to ensure that the terms written in the Section 3 of the Settlement Agreement were not only semantically flawless but also truthfully derived from the representations asserted by Rodina of Defendant at the Settlement Meeting.

328.  Defendant as a big corporation had not only the means but also the abilities of ensuring that the terms written in the Section 3 of the Settlement Agreement were not only semantically flawless but also truthfully derived from the representations asserted by Rodina of Defendant at the Settlement Meeting.

329.  After signing the Settlement Agreement, Defendant as a big corporation had not only plenty of time but also opportunities to recognize the ambiguity of the terms of the Section 3 of the Settlement Agreement.

330.  After signing the Settlement Agreement, Defendant as a big corporation had not only the means but also the abilities of recognizing the ambiguity of the terms of the Section 3 of the Settlement Agreement.

331.  After signing the Settlement Agreement, Defendant as a big corporation had not only plenty of time but also opportunities to understand that the terms of the Section 3 of the Settlement Agreement had to be semantically and logically matching the representations asserted by Rodina of Defendant at the Settlement Meeting.

332.  After signing the Settlement Agreement, Defendant as a big corporation had not only plenty of time but also opportunities to understand that the terms of the Section 3 of the

Settlement Agreement had to be truthfully derived from the representations asserted by Rodina of Defendant at the Settlement Meeting.

333. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation had not only plenty of time but also opportunities to recognize the ambiguity of the terms of the Section 3 of the Settlement Agreement (See Exhibit 14 and Exhibit 15)

334. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation had not only the means but also the abilities of understanding Plaintiff's interpretation on the proper meaning of the ambiguity of the terms of the Section 3 of the Settlement Agreement (See Exhibit 13, Exhibit 14 and Exhibit 15)

335. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation was given not only plenty of time but also opportunities to understand the maxims of the common law with regard to disputes on the ambiguity of the terms of the Section 3 of the Settlement Agreement. (See Exhibit 14 and Exhibit 15)

336. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation had the contractual duty of interpreting the ambiguity of the terms of the Section 3 of the Settlement Agreement in accordance with the maxims of the common law.

337. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation had plenty of time to understand that Defendant had the contractual duty of complying with the terms of the Section 3 of the Settlement Agreement in a way that conformed to flawless semantics because Defendant had the Settlement Agreement written in accordance with Defendant's designs. (See Exhibit 14 and Exhibit 15)

338. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation undoubtedly demonstrated that Defendant had not only the means but also the abilities of understanding the rulings of the law regarding Defendant's contractual duty of complying with the terms of the Section 3 of the Settlement Agreement in case of disputes on the ambiguity of the terms of a written contract like the Settlement Agreement, which was written in accordance with Defendant's designs. (See Exhibit 15)

339. After Plaintiff informed Defendant of Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in the letter dated April 11, 2005, Defendant as a big corporation undoubtedly demonstrated that Defendant knowingly, willfully and wrongfully violated the contractual duty of complying with the terms of the Section 3 of the Settlement with Defendant's intentional and/or reckless disregard of the law by consciously and emphatically asserting a fraudulent interpretation on the proper meaning of the Ambiguous Sentence in the Section 3 of the Settlement Agreement for the purpose of deceiving Plaintiff. (See Exhibit 14 and Exhibit 15)

340. Defendant undoubtedly demonstrated not only the intent of calculatingly and dishonestly exploiting the ambiguity of the Ambiguous Sentence in the Section 3 of the Settlement Agreement to willfully breach the Settlement Agreement, but also the intent of purposely and consciously deceiving Plaintiff by various deceitful means. (See Exhibit 13, Exhibit 14 and Exhibit 15)

341. Based on the facts that Defendant undoubtedly demonstrated the intent of calculatingly and dishonestly exploiting the Ambiguous Sentence in the Section 3 of the Settlement Agreement for the sake of defrauding Plaintiff of Plaintiff's legal rights, and that Defendant had the Settlement Agreement written in accordance with Defendant's designs, and that Defendant had plenty of time and/or opportunities of thinking, designing, constructing, deciding, discussing, debating, considering, deliberating, writing, reviewing, re-writing, re-reviewing, refining, improving, correcting and/or perfecting the finally-approved Ambiguous Sentence as part of the terms of Section 3 of the Settlement Agreement, and that Defendant had the means of access to some very talented professionals including (but not being limited to) lawyers and best writers, and that it was not hard to construct the terms of Section 3 of the Settlement Agreement in an undisputable way based upon the representations made at the Settlement Meeting, and that Defendant undoubtedly demonstrated the intent of calculatingly and fraudulently creating a sentence structure for the sake of deceiving Plaintiff by deliberately and fraudulently omitting the noun *Plan* after the compound noun *Motorola Long-Term Disability* in Defendant's Interpretation Of Section 3 Of The Settlement Agreement As Of April 4, 2005, and that Defendant demonstrated the intent of intentionally and/or recklessly disregarding the maxims of the common law

Page 63 of 72

governing the proper interpretation in case of disputes on the ambiguity of the terms of a written contract, Defendant undoubtedly demonstrated the intent of fraudulently and calculatingly constructing the Ambiguous Sentence of the Section 3 of the Settlement Agreement to be artificially ambiguous in order to fabricate the capability of terminating Plaintiff's coverage for the past and continued disability benefits in the future. (See Exhibit 2, Exhibit 13, Exhibit 14 and Exhibit 15)

342.  Defendant undoubtedly demonstrated the intent of committing a fraud by emphatically, consciously and repeatedly insisting to exploit a fraudulent interpretation on the proper meaning of the Ambiguous Sentence in Section 3 of the Settlement Agreement. (See Exhibit 13 and Exhibit 15)

343.  Defendant undoubtedly demonstrated the intent of deceiving Plaintiff by emphatically, consciously and repeatedly asserting an unreasonable and illogical conclusion, where Plaintiff had willingly agreed to settle the Lawsuit and to give up Plaintiff's many other legal rights in exchange for the compensation (the past and continued disability benefits) that could become null at the exclusive discretion of Defendant and would possibly become null immediately after the settlement of the lawsuit. (See Exhibit 13 and Exhibit 15)

344.  Defendant had the influences on not only the terms of Section 3 the Settlement Agreement but also the representations that Rodina had assured Plaintiff at the Settlement Meeting.

345.  In order to settle the Lawsuit, Rodina as Human Resource Director of Defendant had to decide Defendant's offers that were material to Plaintiff for the purpose of entering into the Settlement Agreement.

346. Defendant had to approve beforehand the offers that Rodina of Defendant designed and/or decided to present to Plaintiff at the Settlement Meeting.

347. Rodina as Human Resource Director of Defendant had not only the means but also the abilities of making the representations that were truthfully equivalent to the intention of the offers that Defendant had approved.

348. Rodina as Human Resource Director of Defendant had not only the means but also the abilities of comprehending the important information (the terms of Defendant's applicable plans) that would affect Plaintiff's participation in receiving the past and continued disability benefits in the future.

349. Rodina as Human Resource Director of Defendant undoubtedly understood the intention of the representations, which were designed and/or decided for the purpose of inducing Plaintiff to enter into the Settlement Agreement.

350. Rodina of Defendant undoubtedly understood beforehand that the representations must be designed to fulfill the needs of Plaintiff or there would not be any settlement of the Lawsuit.

351. At the Settlement Meeting, Rodina of Defendant calculatingly decided to took advantage of the fact that Plaintiff would agree to settle the Lawsuit in exchange for Motorola's [Defendant's] long-term disability benefits that Plaintiff would continue to receive in the future after the settlement of the Lawsuit.

352. At the Settlement Meeting, Rodina of Defendant knowingly and purposely misled Plaintiff with misrepresentations because Rodina understood beforehand that Plaintiff would not agree to settle the Lawsuit and to give up Plaintiff's many other legal rights in exchange for the compensation (the past and continued disability benefits) that could

become null at the exclusive discretion of Defendant and would possibly become null immediately after the settlement of the Lawsuit.

353. At the Settlement Meeting, Rodina of Defendant undoubtedly demonstrated the intent of committing a fraud by intentionally and consciously concealing the important information (the terms of Defendant's applicable plans) that would affect Plaintiff's participation in receiving the past and continued disability benefits in the future.

354. At the Settlement Meeting, Rodina of Defendant undoubtedly demonstrated the intent of fraudulently inducing Plaintiff to settle the Lawsuit by purposely and consciously presenting Plaintiff with false statements, which were material to the settlement of the Lawsuit.

355. At the Settlement Meeting, Rodina of Defendant calculatingly decided to fraudulently induce Plaintiff to agree to enter into the Settlement Agreement to settle the Lawsuit by purposely misleading Plaintiff with Defendant's Representation #1 and Defendant's Representation #2.

356. Defendant's Representation #1 and Defendant's Representation #2 were fraudulent because combining Defendant's Representation #1 and Defendant's Representation #2 with a conjunction *And* would become a compound sentence of ambiguity like the Ambiguous Sentence in Section 3 of the Settlement Agreement.

357. One interpretation of the Ambiguous Sentence in Section 3 of the Settlement Agreement was calculatingly exploited for the purpose of inducing Plaintiff to sign the Settlement Agreement to settle the Lawsuit because Plaintiff had subconsciously interpreted the Ambiguous Sentence as a compound sentence of comprising two

separate representations, which were purposely and consciously designed by Defendant to present to Plaintiff at the Settlement Meeting.

358. Another interpretation of the Ambiguous Sentence in Section 3 of the Settlement Agreement was calculatingly exploited for the purpose of fabricating the capability of terminating Plaintiff's future participation in receiving the past and continued long-term disability benefits after the settlement of the Lawsuit.

359. At the Settlement Meeting, Rodina of Defendant undoubtedly demonstrated the intent of misleading Plaintiff by purposely and consciously asserting a representation that "Motorola [Defendant] agrees not to inquire into Ho's [Plaintiff's] eligibility for past and continued disability benefits based upon the [discrimination and retaliation] allegations made in this Lawsuit." (Defendant's Representation #3)

360. In view of Defendant's Representation #3, it was logical to conclude that Ho's [Plaintiff's] coverage for past and continued disability benefits was based upon the [discrimination and retaliation] allegations made in this Lawsuit, and therefore Ho's [Plaintiff's] future coverage for the past and continued disability benefits was based upon the [discrimination and retaliation] allegations made in this Lawsuit.

361. In view of the premise that Ho's [Plaintiff's] future coverage for past and continued disability benefits was based upon the [discrimination and retaliation] allegations made in this Lawsuit, it was logical and justified to conclude that Defendant's Representation #1 was one of the two clauses of which the Ambiguous Sentence was composed.

362. Hence, Plaintiff's interpretation on the proper meaning of the ambiguity of the Ambiguous Sentence in Section 3 of the Settlement Agreement was not only reasonable and logical but also justifiable.

363. At the Settlement Meeting, Rodina of Defendant undoubtedly demonstrated the intent of purposely and consciously using Defendant's Representation #3 as a misleading representation so that when Plaintiff saw Defendant's Representation #3 in Section 3 of the Settlement Agreement, Plaintiff would subconsciously have no doubt to sign the Settlement Agreement by thinking that the Ambiguous Sentence in the Section 3 of the Settlement Agreement was a compound sentence consisting of Defendant's Representation #1 and Defendant's Representation #2.

364. Plaintiff's interpretation on the proper meaning of the Ambiguous Sentence in Section 3 of the Settlement Agreement was justified because Defendant's Representation #3 was consciously and purposely employed to deceive Plaintiff to believe that the Ambiguous Sentence was a compound sentence consisting of Defendant's Representation #1 and Defendant's Representation #2.

365. Plaintiff settled the Lawsuit as a result of reasonably and justifiably relying on what was written in Section 3 of the Settlement Agreement, of which Plaintiff's interpretation was truthfully derived from the fraudulent misrepresentations of Defendant at the Settlement Meeting.

366. Plaintiff suffered monetary damages in excess of US$2,500,000.00 as a direct and proximate result of Plaintiff's reasonable and justified reliance on the fraudulent misrepresentations, which were purposely and consciously designed and/or decided by

Defendant to present to Plaintiff at the Settlement Meeting for the purpose of inducing Plaintiff to agree to sign the Settlement Agreement to settle the Lawsuit.

367. As a direct and proximate result of the unlawful fraud committed by Defendant, Plaintiff and Plaintiff's dependents have suffered substantial and irreparable injury, loss of income and other monetary benefits; Plaintiff has also suffered and will continue to suffer, irreparable injury, including physical, emotional and mental anguish, embarrassments and damage to his reputation.

368. Due to the facts that Defendant as a big corporation had the means to understand the law and that Defendant knowingly and wrongfully committed a fraud in a willful and malicious way, which caused Plaintiff and Plaintiff's family to suffer substantial damages financially, mentally and emotionally as a direct and proximate result of Defendant's misconducts, Plaintiff is therefore entitled to punitive damages based upon Defendant's intentional and/or reckless disregard of the law.

369. Plaintiff is informed and believes in good faith, and based thereon alleges, that Defendant's unlawful fraudulent concealment was a calculated act despite Defendant's knowledge that such actions violated the law. Plaintiff is, therefore, entitled to punitive damages based upon Defendant's intentional and/or reckless disregard of the law.

370. By consciously using some artifices to fraudulently induce Plaintiff to enter into the Settlement Agreement to settle the Lawsuit and to give up Plaintiff's other legal rights, Defendant has directly and proximately caused Plaintiff to suffer monetary damages in excess of $2,500,000.00 and to endure many years of emotional and mental anguish.

**Plaintiff demands a trial by jury on all claims.**

**Wherefore,** the Plaintiff, JAMES C. HO, respectfully prays this Honorable Court for entry of Judgment in his favor and against the Defendant, MOTOROLA INC., by granting the following relief as to Count II and by entering an Order requiring Defendant to pay Plaintiff:

    (i)    an amount exceeding $2,500,000.00,

    (ii)    court costs,

    (iii)    costs of this action, including his reasonable attorney's fees,

    (iv)    compensatory and punitive damages in the amount allowed by law,

    (v)    all lost employment benefits, retirement benefits and all other benefits Plaintiff would have received but for Defendant's unlawful commitment of fraud to cheat Plaintiff to settle the Lawsuit, until Plaintiff attains the age of 75,

    (vi)    making Plaintiff whole by awarding him lost back pay, employee benefits, retirement benefits, and all other benefits Plaintiff would have received but for Defendant's unlawful commitment of fraud to cheat Plaintiff to give up the Lawsuit.;

    (vii)    prejudgment interest on all of the above amounts, and

    (viii)    such further and additional relief that this Honorable Court deems fair, equitable, and just.

## JURY DEMAND

**Plaintiff demands a jury trial on all claims.**

Respectfully submitted,

_James Ho_

JAMES C. HO, pro se

Dated: _10-29-07_

James C. Ho ("Plaintiff")
2136 Briar Hill Drive
Schaumburg, Illinois 60194
(847) 885-1893